James S. MURRAY, individually and as Executor of the Estate of Elsie Murray, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 59–491–F.

United States District Court
D. Massachusetts.

Oct. 19, 1962.

James M. Kendrick, Boston, Mass., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Lee L. Phillips, Tax. Div., Dept. of Justice, Washington, D. C., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action to recover income taxes allegedly illegally collected from plaintiff, in which the sole issue is whether a transfer of funds made by the Internal Revenue Service in 1953 from the account of plaintiff to the account of Margaret E. Murray was authorized by plaintiff.

Plaintiff and his brother Francis Murray prior to 1942 had been engaged in operating the Murray Leather Company as a partnership. After the death of Francis, James continued to operate the business. Under an agreement made in 1942, the share of the deceased partner was not to be withdrawn from the business, and Margaret E. Murray, the widow of Francis, was to receive one-half the amount drawn as salary by the surviving partner and one-third of the net profit for each fiscal year.

In 1949 plaintiff sustained a net operating loss. After allowance of a net operating loss carry-back to the year 1947 and application of the resulting credit to other tax liabilities of plaintiff, a refund check for $6,317.43 was issued to plaintiff. On June 28, 1951 this check, endorsed by plaintiff, was returned to the Collector of Internal Revenue for application to the account of Murray Leather Company. Of this amount, after deducting $27.86 for interest due, a total of $6,289.57 was applied to plaintiff's 1943 account. On October 25, 1951 plaintiff sent to his accountant, Leo T. Foster, a check in the amount of $2,500 payable to the Collector of Internal Revenue, with directions that it be credited to the account of Margaret E. Murray. This check was received by the Internal Revenue Service on or about October 31, 1951. Interest due of $373.05 was deducted and the remaining sum of $2,126.95 was applied to plaintiff's 1945 account. Another payment of $481.03 made by plaintiff on May 13, 1952 was also applied to plaintiff's 1945 account.

At the time these sums were credited to these 1943 and 1945 accounts there was no amount due for those years and consequently there arose credit balances for those two years in favor of plaintiff in the amount of $8,897.55. In February, 1953 the Internal Revenue Service transferred these balances in satisfaction of the outstanding liabilities of his sister-in-law, Margaret E. Murray.

In 1949 the Internal Revenue Service began an investigation which eventually resulted in a determination that plaintiff had failed to report correctly the income of the Murray Leather Company for the years 1943 and 1945, and that in consequence the income tax liability of both

plaintiff and Margaret E. Murray had been substantially understated. The tax deficiency of Margaret to which the 1953 transfer was applied resulted from additional assessments against her based on additional unreported income of Murray Leather Company regarded as having been constructively received by her.

On May 10, 1957 plaintiff paid to the Internal Revenue Service $15,725.06 representing taxes in the amount of $8,897.-55 with interest of $6,827.51. Plaintiff in this action seeks to recover this payment on the ground that the transfer of February, 1953 was wrongfully made and that if the amount transferred had been properly applied to his then outstanding tax liability, the government's claim which he paid in 1957 would thereby have been satisfied.

The sole issue, therefore, is whether or not plaintiff authorized the transfer made in 1953. Government admits it has no record of any written authorization of this transfer but contends that plaintiff did agree to it orally. Sometime between August, 1951 and April, 1952 John J. Duffy, an Internal Revenue Service Group Supervisor in charge of collecting outstanding tax liabilities of James, Margaret and other members of the Murray family, met with plaintiff and Leo T. Foster, an accountant who handled certain tax matters for plaintiff. It was the testimony of Duffy that at that meeting plaintiff stated to him that he wanted the account of Margaret Murray cleared up, or arrangements made to clear up the Margaret Murray account, and then to have the James Murray account taken care of. Foster in his deposition testified that at the meeting the transfer of credits from the account of plaintiff to that of Margaret was discussed and that in the presence of plaintiff and with his approval Foster directed Duffy to transfer the $8,897.55 credit to Margaret's account. While it was the usual practice in the Internal Revenue Service to secure a written authorization of such a transfer, Duffy did not do so in this case, but himself issued a memorandum which caused the transfer to be made on the records of the Internal Revenue Service. It was the testimony of plaintiff that he never authorized such a transfer orally or in writing and never knew anything about it. Plaintiff also testified that his hearing was impaired and he did not always hear everything said in his presence.

. There was evidence that plaintiff had made payments to the Internal Revenue Service to be applied to Margaret Murray's tax account, although these payments were charged against amounts due to her from the Murray Leather Co. It was the testimony of Duffy that he was engaged in trying to collect tax claims from the plaintiff and other members of the Murray family whose tax deficiencies arose out of their connection with the Murray Leather Company. Foster testified that he was hired by plaintiff to assist him in the tax problems arising out of the understatement by plaintiff of the income of the company, that the tax problems of plaintiff, his brother and his sister-in-law were inextricably involved in a single package and that he was expected to work and clear up the tax problems of all of them.

■ On all the evidence the court finds that the version of the relevant events given by the testimony of Duffy and Foster is the correct one, that plaintiff told Duffy that he wanted the tax deficiency of Margaret Murray to be cleared up before his own, and that Foster, with the previous approval of plaintiff, in his presence and without objection from the plaintiff, authorized Duffy to effectuate the transfer of the credit of $8,897.55 from the tax accounts of plaintiff to the account of Margaret E. Murray. Consequently, it must be held that the transfer was made by the Internal Revenue Service with the authorization and consent of plaintiff.

■ Plaintiff contends that an authorization by a taxpayer must be in writing. However, the language of the Court of Appeals in its earlier opinions in this case, Murray v. United States, 1 Cir., 300 F.2d 804, and Murray v. United States, 1

Cir., 292 F.2d 602, do not support the interpretation plaintiff seeks to give them. What the court clearly seems to say is that the government has the burden of proving there was authorization of the transfer, and not of proving that this authorization was in writing.

Plaintiff further contends that since he owed taxes to the government in the amount of $14,728.34 in February, 1953, the credits in question could not be transferred to the account of another taxpayer even with his consent. While it is true that plaintiff was not entitled to have these funds repaid to him while he still owed taxes to the government, there seems to be no reason why it should not be applied in accordance with his directions so long as the government retains the funds in satisfaction of an outstanding tax liability.

Judgment will be entered for the defendant.